IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

FABIOLA MUNOZ, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

       Plaintiffs,

vs.

GPIF BROWN PALACE HOTEL LLC, a Delaware Limited Liability Company

       Defendant.

_____/

# COMPLAINT

## Introduction

Plaintiffs, FABIOLA MUNOZ, an Individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, GPIF BROWN PALACE HOTEL LLC, a Delaware Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 et seq. ("CADA").

## The Parties

1. Plaintiff, FABIOLA MUNOZ, is an individual over eighteen years of age and is otherwise sui juris.

2. Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3.      Defendant, GPIF BROWN PALACE HOTEL LLC, a Delaware Limited Liability Company, owns or operates a place of public accommodation alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4.      Defendant's property, also known as The Brown Palace Hotel & Spa ("Brown Palace"), is a hotel located at 321 17th Street, Denver, Colorado 80202, in the County of Denver ("Subject Property").

5.      Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8.      The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

9.      Plaintiff, FABIOLA MUNOZ, is an individual with disabilities as defined by and pursuant to the ADA. Ms. Munoz is a paraplegic, with no use of her lower extremities, stemming from a severe spine cord injury and therefore has a physical impairment that substantially limits many of her major life activities[3] including, but not limited to, not being able to walk or stand. Due to her injuries Ms.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 C.F.R. § 36.105(b)(1-2)

Munoz was medically retired from the United States Navy.

10. Ms. Munoz requires the use of a wheelchair, at all times, to ambulate and is a member of the Plaintiff organization, Access 4 All, Inc.

11. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

**Factual Background**

12. Ms. Munoz is a staunch advocate of the ADA. Since becoming aware of his rights, and their constant infringement, she has dedicated his life to this cause so that she, and others like her, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

13. Ms. Munoz encounters architectural barriers at many of the places that she visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous, and even dangerous for her and other wheelchair users.

14. The barriers to access that Ms. Munoz experiences at differing places of public accommodation are similar in nature. For example, she is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible guestrooms (even when designated "accessible" or "handicapped"). She has become endlessly frustrated and disheartened by the repetitiveness of the complaints she has been forced to make to the employees and management at various establishments in the past, normally to no avail.

15. Although a Florida resident, Ms. Munoz travels to Colorado several times per year, both for pleasure – in the form of visiting friends and attending concerts – and for business meeting pertaining to Access 4 All, Inc.

16. Ms. Munoz has visited the Brown Palace on multiple occasions, his last visit occurring on or about April 17, 2022. Ms. Munoz stayed at the Brown Palace as an overnight guest and bone fide purchaser to avail herself of the goods and services offered to the public within but found that the Subject Property was littered with violations of the ADA, both in architecture and in policy.

17. Ms. Munoz has reservations to return to the Brown Palace on or about November 1, 2022, and February 8, 2023. She intends to revisit the Brown Palace not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance - she truly hopes that her visits are not made in vain.

18. Ms. Munoz has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Brown Palace.

19. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

20. Thus, Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the barriers she has personally experienced which are listed in paragraph 25 of this complaint.

21. Following any resolution of this matter Plaintiffs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection shall occur as set forth in the parties' settlement agreement or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

22.     Plaintiffs reallege and incorporate by reference all the allegations contained in all the preceding paragraphs.

23.     The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

24.     A preliminary inspection of the Subject Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in paragraph 25 are readily achievable and/or technically feasible.

25.     The following are architectural barriers and violations of the ADA that Ms. Munoz has personally encountered during his visits to the Brown Palace:

**Parking and Exterior Accessible Route**

a. Brown Palace fails to provide a safe and accessible route to and from the porte cochere which has impeded Ms. Munoz's ability to load/unload from vehicles in the passenger loading zone; a violation of ADAAG Section 4.6.6 and Section 503 of the 2010 Standards for Accessible Design. Ms. Munoz could not make use of the passenger loading zone due to the excessive sloping, the lack of unloading space, and improper curb ramps.

**Entrance Access and Path of Travel**

b. There is no compliant route from transit, sidewalk, and/or parking areas for Ms. Munoz to access the Brown Palace; this is a violation of ADAAG Sections 4.1.2 and 4.3 and Sections 402, 403, 405, and 406 of the 2010 ADA Standards. Ms. Munoz could not safely access the building due to the lack of an accessible route; she was forced to travel around and through obstacles to reach the building.

c. The exterior accessible route throughout the Subject Property is impeded by cross-slopes which exceed the allowable limits; in violation of ADAAG Section 4.3 and Sections 402 and

403 of the 2010 ADA Standards. Cross-slopping presents Ms. Munoz with a tipping hazard, thus she is forced to travel around obstacles while traversing the exterior accessible route which leads from the exterior to the entrance.

d. The ramp used to access the Brown Palace contains excessive sloping and cross-sloping; in violation of ADAAG Section 4.8 and Section 405 of the 2010 ADA Standards. Ms. Munoz was forced to travel through these obstacles which, as in the above, presented her with the danger of tipping over and falling from her wheelchair.

e. The main entrance doors at Brown Palace are outfitted with inaccessible door hardware; in violation of ADAAG Section 4.13.9 and Section 404 of the 2010 ADA Standards. Due to the improper door hardware Ms. Munoz could not gain entry to the building without assistance.

**Access to Goods and Services**

f. The Brown Palace fails to make reasonable accommodations in policies, practices, and procedures to provide for the full and equal enjoyment of disabled individuals nor does it maintain the elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to remove debris and stored goods on counter tops and a failure to maintain clearance to accessible elements and paths of travel prevented Ms. Munoz from freely traveling about the hotel and using the accessible elements, including but not limited to vending machines, tabletops, writing surfaces, and dining tables.

g. Ms. Munoz could not access the dining and lounge tables nor the guest workstations as they lack the proper knee and toe clearance necessary for her to approach; these barriers are a violation of the ADAAG and Sections 308 and 902 of the 2010 ADA Standards. Due to the foregoing Ms. Munoz could not make use of the writing surfaces nor dine in a comfortable manner.

 h. The interior accessible route throughout the Brown Palace is impeded by the presence of steps - directional signage and/or equal facilitation are not provided; a violation of ADAAG Section 4.3 and Section 402 of the 2010 ADA Standards. Due to the presence of stairs Ms. Munoz was unable to travel freely throughout the interior of the hotel.

**Lobby/Common Area Restrooms**

 i. Due to a lack of latch-side clearance at the lobby restroom door Ms. Munoz was unable to enter without assistance. This barrier to access is a violation of the ADAAG and Section 404 of the 2010 ADA Standards.

 j. The lobby restroom contains dispensers and storage areas which are mounted improperly, a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Ms. Munoz was unable to reach or make use of the improperly mounted dispensers.

 k. The lavatories located within the lobby restroom at Brown Palace lack the proper knee and toe clearance, a violation of ADAAG Section 4.19 and Section 606 of the 2010 Standards for Accessible Design. Ms. Munoz could not access the lavatory because of the lack of knee clearance; he could not approach nor reach the sink.

 l. The toilet stalls are improperly designed and unusable by Ms. Munoz; violating ADAAG Sections 4.17 and 4.17.2 and Sections 604 and 609 of the 2010 ADA Standards. Barriers to access within the stalls include improperly mounted grab bars, stall doors which are not self-closing, and flush controls which are mounted on the wall-side. Due to these barriers Ms. Munoz could freely access the toilet without assistance.

**Accessible Guestrooms and Suites**

 m. The drapery wands, controls on lamps, and HVAC controls are mounted beyond Ms. Munoz' reach, violating the ADAAG and Sections 308, 309, and 806.2.1 of the 2010 ADA Standards. Due to their improper height Ms. Munoz could not make use of these elements and required

assistance.

n. The roll-in shower within the guestroom does not possess the requisite clear floor space, is outfitted with an improperly mounted spray unit, lacks a secure folding seat, and contains improper grab bars needed for stabilization, these barriers violate the ADAAG and Sections 308, 607, 608, 608.2.2, 608.2.3, and 609 of the 2010 ADA Standards. The roll-in shower must contain a securely mounted folding seat, controls which are easily accessible from said seat, and a flat surface for safe entry into the shower. Due to the lack of accessible elements Ms. Munoz could not make use of the shower in a safe and comfortable manner.

o. Towel racks, iron, ironing board, rods, shelves, and other storage surfaces are mounted above the allowable limits, a violation of the ADAAG and Section 308 2010 ADA Standards. Due to their improper location Ms. Munoz was unable to make full use of these elements.

p. The water closet within the guestroom restroom contains improperly mounted grab bars, a seat which is too low, an improper centerline, improperly mounted toilet tissue dispensers, and a flush control which is mounted on the wall-side; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to the foregoing, Ms. Munoz could neither safely transfer onto nor make full use of the water closet without assistance.

26. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA

Standards"), as promulgated by the U.S. Department of Justice.[4]

27.    The discriminatory violations described in paragraph 25 may not be an exhaustive list of the ADA violations that exist at the Brown Palace, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Ms. Munoz.  Plaintiffs require thorough inspection of the Defendant's place of public accommodation to photograph and measure the architectural barriers which exist at the Subject Property and violate the ADA.

28.    Plaintiffs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

29.    Defendant has discriminated against Plaintiffs, and all those similarly situated, by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

30.    Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[5]

31.    Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

32.    Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is

---

[4] 28 CFR § 36.104
[5] 42 U.S.C. § 12181(b)(2)(A)(iv)
[6] 42 U.S.C. § 12181(b)(2)(A)(ii)

excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

33.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

34.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Munoz, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9] Discovery in this matter will reveal if and when such alterations have taken place at the Subject Property, and to what standard of remediation the Defendant must meet/exceed.

35.     Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

36.     28 CFR § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Brown Palace must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

---

[7] 42 U.S.C. § 12181(b)(2)(A)(iii)
[8] as defined by 28 CFR § 36.401(a)(2)
[9] 28 CFR § 36.402(a)(2)

  b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

  c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

37. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

38. Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

39. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

40. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter the Brown Palace and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[10]

---

[10] 42 U.S.C. § 12188(b)(2)

**WHEREFORE,** Plaintiffs respectfully request:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to cure all ADA violations existing at the Subject Property listed herein or later found through discovery; to make the Subject Property accessible to and usable by individuals with disabilities; and to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
### Violation of Colorado Anti-Discrimination Act, C.S.R. § 24-34-601 et seq. (CADA)

41. Plaintiffs reallege and incorporate by reference all the allegations contained in all of the preceding paragraphs.

42. Fabiola Munoz is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

43. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

44. Colorado law provides that no person shall be discriminated against in regard to public

accommodations on the basis of disability.[11]

45. Pursuant to C.S.R. § 24-34-602(1) Ms. Munoz is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

46. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

47. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

48. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

49. As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Ms. Munoz, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

50. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Ms. Munoz has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

---

[11] C.S.R. § 24-34-601(2)(b)

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the CADA.

c. An injunction ordering Defendant to immediately comply with the CADA by removing all architectural barriers listed herein or later found through the normal course of discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to maintain the required accessible features at the Subject Property as required by the CADA to cease its discriminatory practices.

f. Other relief that this Court deems just and proper and is allowable under the CADA.

Respectfully submitted on this 6th day of September 2022,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Direct (609) 319-5399
Office (609) 236-3211
Fax (609) 900-2760
js@shadingerlaw.com
*Attorney for Plaintiffs*